FREDERICK H. BLAKE, APPELLEE, v. LAURENTINA A. WEST, APPELLANT.

FILED SEPTEMBER 25, 1911. No. 16,789.

1. **Adverse Possession:** ENTRY BY PERMISSION. Where the possession of real estate is the result of an entry upon the premises by per-

mission of the legal owner, such possession will not become adverse until some act is committed by the occupant rendering it so, and notice thereof is brought home to the owner of the legal title.

2. ———: ENTRY UNDER CONTRACT TO PURCHASE. One who enters into the occupancy of real estate under an oral contract to purchase it cannot afterwards obtain title thereto by adverse possession without showing that his occupancy had assumed an adverse character, and continued as such during the statutory period.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*L. H. Bradley,* for appellant.

*Henry E. Maxwell, contra.*

BARNES, J.

Action in ejectment to recover lot 3, in block 13, Briggs' Place addition to the city of Omaha. The plaintiff's petition contained the usual averments in such cases, and the answer was a general denial. Both parties waived a jury and the cause was tried to the court. The plaintiff had the judgment, and the defendant has appealed.

Appellant contends that the judgment is not sustained by the evidence, and this is the only question presented for our determination. It appears from the printed abstract that the plaintiff established a complete paper title to the property in question, and this fact is not disputed by the appellant. It also appears that the real defense which was interposed by the appellant was adverse possession for more than the statutory period of ten years next before the commencement of the plaintiff's action. To establish her defense, she testified that she resided on lot 4, which adjoins the lot in question; that she went into possession of both lots in September, 1894, and that she bought the lots of one Erastus Benson on contract, in 1894, and was to pay in monthly payments; that she moved her barn onto lot 3, and that she had been in pos-

session of the lot ever since that time; that she set out trees, cut the grass, and seeded it down; that she was away for a time, and the weeds were allowed to grow; and that she paid the taxes for the years 1894 to 1897, inclusive. On cross-examination she testified that she never had any written contract for the purchase of either of the lots; that she obtained her deed to lot 4 in 1896; that she was to pay $1,000 for lot 3 in instalments of $30 a month, but that she had never made any payments thereon; that Mr. Benson told her to pay the taxes; that she paid them up to 1897, but had paid nothing since; that the lot had been sold for taxes before 1897, and also since that time. It appears that the barn in question was not placed on a brick foundation, and that the judgment in plaintiff's favor gave the defendant ample time to remove it. It further appears that shortly before the commencement of this action the plaintiff's attorney saw the defendant several times in order to see if some arrangements could not be made to obtain possession; that she then stated that she had a contract for lot 3, but had never made any payments except a few years' taxes; that when she heard of the foreclosure suit (through which the plaintiff's grantor obtained his title) she stopped paying taxes; that she moved off from the lot, and that some three months later she changed her mind and moved back again. She also requested that the bringing of this action be deferred until she could see Mr. Briggs, who was plaintiff's grantor, and get a deed to the lot from him; that her request was granted, and delay was had until it became apparent that she did not intend to take any steps to obtain the title, when this suit was commenced.

From this testimony it is apparent that defendant's claim of adverse possession really dated from the time alleged in the plaintiff's petition. It also appears, without dispute, that when the defendant first took possession of that portion of lot 3, upon which her barn was situated, she did so by permission, and therefore from that time on until she evinced a determination to maintain her

possession as against the owner of the lot her possession could not be said to be adverse. *Lanham v. Bowlby,* 79 Neb. 39; *Johnson v. Butt,* 46 Neb. 220; *Smith v. Hitchcock,* 38 Neb. 104; *Beer v. Dalton,* 3 Neb. (Unof.) 694.

A careful examination of the record satisfies us that the judgment of the district court was right, and it is therefore

AFFIRMED.

SEDGWICK, J., not sitting.