HILDEEGARD FREDRIKSON, APPELLEE, v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

FILED FEBRUARY 21, 1934. No. 28788.

*Brown, Fitch & West*, for appellant.

*Edith Beckman, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

RYAN, District Judge.

The defendant and appellant, Massachusetts Mutual Life Insurance Company, is a corporation and engaged in the general life insurance business. On the 6th day of January, 1923, it executed and delivered to Robert Fredrikson a policy of life insurance. The policy provided that on the death of the said Robert Fredrikson the defendant would pay to Hildeegard Fredrikson, the plaintiff herein, the

sum of $2,000. The plaintiff and her husband were married on April 16, 1917, and resided in Omaha, Nebraska. For some time prior to the 14th day of May, 1924, the husband was employed by the Trans-Mississippi Grain Company as bookkeeper and cashier. On the morning of the 14th of May, 1924, Mr. Fredrikson left home for work as usual. Fredrikson did not return that night and up to date he has failed to return. The plaintiff commenced this action in the district court for Douglas county on the 5th day of August, 1931, against the defendant, Massachusetts Mutual Life Insurance Company, for the sum of $2,000, with interest and the costs of suit. At the conclusion of the evidence the defendant moved the court to instruct the jury to return a verdict in its favor. The plaintiff also moved the court to instruct the jury to return a verdict in her favor. The court discharged the jury and sustained the motion of the plaintiff, overruled the motion of the defendant, and entered judgment in favor of the plaintiff for $2,163, together with interest thereon at the rate of 7 per cent. from the 6th day of December, 1932. The court also allowed the plaintiff an attorney fee of $250, to be taxed as part of the costs. The motion for a new trial was overruled and the defendant appeals.

The defendant makes four assignments of error. The first relates to the admission of evidence and the last three are in effect that the evidence is insufficient to sustain the judgment. There is no question of fact involved in the case, as the defendant did not introduce any testimony. The evidence shows that Robert Fredrikson, the insured, was a German by birth; that he came to the United States about the year 1911 and had received his first papers. He married the plaintiff in 1917, when he was 25 years of age. His domestic life appears to have been happy. He was a home loving man and never stayed away from home. He appears to have been a man of good habits and character, industrious and ambitious, and had been promoted by his employers. From the time of the marriage of the plaintiff, she and her husband had lived in Omaha, except

for a period of 15 months when they lived in Germany. He was a member of the Y. M. C. A. of Omaha and of St. Mary Magdalene Church. During all his Omaha residence he was employed by the Trans-Mississippi Grain Company as bookkeeper and cashier. He corresponded regularly with some members of his family in Germany. The morning following his disappearance the plaintiff received a note from him by registered mail, which read as follows:

"Honey Dear:

"I have gone wrong down in the office and have lost my job. I am not strong enough to face you so I must wander into the world and make good again. I know it will be hard for you, yet it is even more hard for me to leave the best wife on earth. Why I have done this I do not know. I will certainly make good again and I shall always take care of you.

"You will hear from me soon. I am ruined in Omaha. * * * Please destroy card. I shall write you soon. I am looking for a job. I have to make good or living will be worth nothing to me.

"Mr. Boyd will explain. $10 is all I have to spare till later.

"With love and broken hearted,

"Yours, Bob."

Shortly after the disappearance of Robert Fredrikson and after appellee had failed to locate her husband or hear from him, she notified the appellant of his disappearance. Three witnesses testified for the plaintiff, the plaintiff herself, Mrs. Rose Stefan, a sister of the plaintiff, and who had accompanied the plaintiff and her husband on their trip to Germany, and Sigmund Bauer, who is described as Fredrikson's closest friend. In addition to the evidence above set forth, the record shows that the plaintiff inserted an advertisement in a daily paper in Omaha, ran it for several days, and then, after a few weeks, repeated the advertisement. She did this several times. She also had their friend, Mr. Bauer, broadcast over the radio. She also corresponded with his family in Germany in an at-

tempt to learn of her husband's whereabouts, or if they had heard from him.

The first assignment of error is that the court permitted the plaintiff to answer the following question. "Q. And in all of their correspondence (referring to the correspondence received from his relatives in Germany) with you, have they ever stated that they have heard or seen of him?" Defendant objected to this as incompetent, irrelevant, hearsay, and not the best evidence. After some discussion the court permitted the witness to answer it. The witness answered: "They stated that they never heard of him." This answer was stricken and the court put the question to her: "Did they ever say in the letters that they heard from him or of him? A. No." Appellant argues that the reception of this evidence amounted to giving parol testimony as to the contents of certain letters without proof of the loss of the originals and also that it was not the best evidence. As to the objection that the question called for the contents of certain letters, we think it is not well taken. The witness did not state what the letters said, but merely stated the negative, that she did not get any information from the letters concerning the whereabouts of her husband. The court, in ruling upon defendant's objection, stated: "If you want the letters you can call for them." Defendant made no demand for the production of the letters.

The second, third and fourth assignments of error are argued together in defendant's brief, and, as stated, they are directed toward the sufficiency of the evidence to sustain the judgment.

In *Holdrege v. Livingston*, 79 Neb. 238, this court held: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." In that case it was further said: "Where a party leaves his domicile with the avowed intention of establishing some

specific new abode, the inquiry must follow him to such new domicile, but * * * there is a total lack of any evidence that Elijah Noyes * * * did in fact establish any new residence or place of abode."

In the case of *McLaughlin v. Sovereign Camp, W. O. W.,* 97 Neb. 71, after quoting from *Holdrege v. Livingston, supra,* this court further held: "In such case the presumption is that the absentee died during the first seven years of his unexplained absence. There is no presumption that his death occurred at any particular time during said period."

The holding of this court in the case of *Rosencrans v. Modern Woodmen of America,* 97 Neb. 568, is: "Where absence of the person insured is shown to have continued for seven years or more, unaccompanied by circumstances which reasonably account therefor on a theory not involving death, it is sufficiently strong to cast the burden of rebutting it on the party who asserts the continuance of life."

Appellant cites and relies upon the cases of *Thomas v. Thomas,* 16 Neb. 553, and *Maxwell v. Maxwell,* 106 Neb. 689. The facts in both these cases differ from the case at bar, in that there was domestic trouble to such an extent as might well explain the absence of the husband. The appellant seriously contends that the note sent to the plaintiff by registered mail is sufficient to explain the absence of the plaintiff's husband. It contends that the statement, "I have gone wrong down in the office and have lost my job," can mean nothing except that he was short in his accounts and was, therefore, guilty of the commission of a crime. We cannot agree with the construction placed upon that sentence. It might mean any of a number of things that would not be criminal. If, in fact, Fredrikson had been short in his accounts, it had ample opportunity to offer proof of that circumstance. It chose not to do so, but to rely upon the statement above quoted. In fact, counsel for appellant objected to any inquiry as to

whether or not there was a shortage in Fredrikson's accounts. This objection was sustained by the court.

Complaint is also made that plaintiff did not call all of Fredrikson's intimate friends or some member of the Y. M. C. A. and of St. Mary Magdalene Church, of which organizations he was a member, to show that nothing had been heard of Fredrikson. We cannot agree that it was necessary for plaintiff to do this or to take the depositions of the living members of his family in Germany. When it was shown that his wife, his sister-in-law, and one of his best friends had not heard from him for a period of more than seven years, this was sufficient to make out a *prima facie* case. Plaintiff was not required to produce all the cumulative evidence available. Defendant elicited the names and whereabouts of the witnesses it complains were not called and was in a position to procure their testimony, if it would avail anything to the defense. It is quite apparent that the appellee made as intensive a search as her limited funds would permit and the same limitation undoubtedly accounts for the restricted number of witnesses called by her.

The judgment of the trial court appears to be sustained by the evidence and is affirmed. Upon application appellee is awarded an additional attorney fee for services in this court in the sum of $200.

AFFIRMED.